**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBIN MANDEL,<br><br>    Plaintiff,<br><br>    v.<br><br>MYLAN N.V., HEATHER BRESCH, ROBERT J. CINDRICH, ROBERT J. COURY, JOELLEN LYONS DILLON, NEIL DIMICK, MELINA HIGGINS, HARRY A. KORMAN, RAJIV MALIK, RICHARD MARK, MARK W. PARRISH, RANDALL L. VANDERVEEN, PAULINE VAN DER MEER MOHR, and SJOERD S. VOLLEBREGT,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robin Mandel ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Mylan N.V. ("Mylan" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and

1

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the business combination pursuant to which (i) Pfizer Inc. ("Pfizer") will spin off its primarily off-patent branded and generic medicines business (the "Upjohn Business") into an entity called Upjohn Inc. ("Upjohn"); (ii) Pfizer will then distribute to its stockholders all issued and outstanding shares of Upjohn stock held by Pfizer through a pro rata dividend; and (iii) Mylan will combine its business with Upjohn and Mylan shareholders will receive one share of Upjohn stock for each Mylan ordinary share, upon which Upjohn will then be renamed Viatris (the "Proposed Transaction").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District and the Company's subsidiary, Agila Specialties Inc. ("Agila"), is incorporated in this District.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Mylan's ordinary shares.

7. Defendant Mylan, together with its subsidiaries, develops, licenses, manufactures, markets, and distributes generic, branded-generic, brand-name, and over-the-counter pharmaceutical products in North America, Europe, and internationally. The Company is incorporated in the Netherlands and its subsidiary, Agila, is incorporated in this District. The Company's ordinary shares trade on the NASDAQ Stock Market under the ticker symbol, "MYL."

8. Defendant Heather Bresch ("Bresch") is Chief Executive Officer and a director of the Company.

9. Defendant Robert J. Cindrich ("Cindrich") is a director of the Company.

10. Defendant Robert J. Coury ("Coury") is Executive Chairman of the Company.

11. Defendant JoEllen Lyons Dillon ("Dillon") is a director of the Company.

12. Defendant Neil Dimick ("Dimick") is a director of the Company.

13. Defendant Melina Higgins ("Higgins") is a director of the Company.

14. Defendant Harry A. Korman ("Korman") is a director of the Company.

15. Defendant Rajiv Malik ("Malik") is President and a director of the Company.

16. Defendant Richard Mark ("Mark") is a director of the Company.

17. Defendant Mark W. Parrish ("Parrish") is a director of the Company.

18. Defendant Randall L. Vanderveen ("Vanderveen") is a director of the Company.

19. Defendant Pauline der Meer Mohr ("Mohr") is a director of the Company.

20. Defendant Sjoerd S. Vollebregt ("Vollebregt") is a director of the Company.

21. Defendants Bresch, Cindrich, Coury, Dillon, Dimick, Higgins, Korman, Malik, Mark, Parrish, Vanderveen, Mohr, and Vollebregt are collectively referred to herein as the "Individual Defendants."

22. Defendants Mylan and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

23. Pfizer develops, manufactures, and sells healthcare products worldwide. Pfizer is incorporated in Delaware with principal executive offices located in New York, New York. Pfizer's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "PFE."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

24. On July 29, 2019, Mylan and Pfizer announced that they had entered into a definitive agreement to combine Mylan with Upjohn in an all-stock transaction. Under the terms of the agreement, each Mylan share would be converted into one share of the new company. Pfizer shareholders would own 57% of the combined new company and Mylan shareholders would own 43%. The press release states, in pertinent part:

> **Mylan and Upjohn, a Division of Pfizer, to Combine, Creating a New Champion for Global Health Uniquely Positioned to Fulfill the World's Need for Medicine**
>
> - *Delivers enhanced global scale and geographic reach, including leading positions in China and other emerging markets*
> - *Combines Mylan's sustainable, diverse and differentiated portfolio of medicines with Upjohn's trusted, iconic brands*
> - *Creates powerful platform comprising Mylan's pipeline engine and supply chain and Upjohn's commercial and medical infrastructure and expertise*
> - *Focused on driving returns through consistent cash flow growth, an attractive dividend and shareholder-focused capital policies*

4

- *Commitment to solid investment grade ratings*
- *Domiciled in the U.S. and governed by Delaware law*
- *Robert J. Coury named Executive Chairman of the new company; Michael Goettler named CEO and Rajiv Malik named President*
- *Concludes work of Mylan's Strategic Review Committee*
- ***Mylan and Pfizer will host Investor Conference Call, Monday, July 29, 2019 at 8:30 AM Eastern Daylight Time***

July 29, 2019 06:45 AM Eastern Daylight Time
HERTFORDSHIRE, England & PITTSBURGH & NEW YORK--(BUSINESS WIRE)--Mylan N.V. (Nasdaq: MYL) and Pfizer Inc. (NYSE: PFE) today announced a definitive agreement to combine Mylan with Upjohn, Pfizer's off-patent branded and generic established medicines business, creating a new global pharmaceutical company. Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, each Mylan share would be converted into one share of the new company. Pfizer shareholders would own 57% of the combined new company, and Mylan shareholders would own 43%. The Boards of Directors of both Mylan and Pfizer have unanimously approved the transaction.

\*     \*     \*

**Financial Highlights**

The new company is expected to have pro forma 2020 revenues[1] of $19 to $20 billion. Pro forma 2020 adjusted EBITDA is anticipated to be in the range of $7.5 to $8.0 billion, including phased synergies of approximately $1 billion annually to be realized by 2023. Pro forma free cash flow for 2020 is expected to be more than $4 billion.

The new company will be focused on returning capital to shareholders, while maintaining a solid investment grade credit rating. It expects to achieve a ratio of debt to adjusted EBITDA of 2.5x by the end of 2021. In addition, the new company intends to initiate a dividend of approximately 25% of free cash flow beginning the first full quarter after close and the potential for share repurchases once the debt to adjusted EBITDA target is sustained.

**Leadership, Governance and Structure**

The new company, which will be renamed and rebranded at close, will be led by Mylan's current Chairman Robert J. Coury, who will serve as Executive Chairman of the new company; Michael Goettler, current Group President, Upjohn, who will serve as Chief Executive Officer (CEO); and Rajiv Malik, current Mylan President, who will serve as President. Ken Parks, currently CFO of Mylan, has agreed to depart the company at closing. Heather Bresch, Mylan's current CEO, will retire from Mylan upon the close of this transaction.

The Board of Directors of the new company will include its Executive Chairman and its CEO, as well as eight members designated by Mylan, and three members designated by Pfizer, for a total of thirteen members.

The new company will be domiciled in the U.S. and incorporated in Delaware and will operate Global Centers in Pittsburgh, Pennsylvania; Shanghai, China, and Hyderabad, India.

\* \* \*

**Transaction Highlights**

The combination will be effected through a Reverse Morris Trust, under which Upjohn is expected to be spun off or split off to Pfizer's shareholders and simultaneously combined with Mylan. The transaction is expected to be tax free to Pfizer and Pfizer shareholders and taxable to Mylan shareholders. The transaction is anticipated to close in mid-2020, subject to approval by Mylan shareholders and customary closing conditions, including receipt of regulatory approvals. No vote is required by Pfizer shareholders.

Upjohn will issue $12 billion of debt at or prior to separation, with gross debt proceeds retained by Pfizer. Upon closing, the new company is expected to have a solid investment grade credit rating. The new company will have approximately $24.5 billion of total debt outstanding at closing.

Centerview Partners LLC and PJT Partners LP are serving as Mylan's financial advisors, and Cravath, Swaine & Moore LLP and NautaDutilh are serving as legal counsel to Mylan. Goldman, Sachs & Co. LLC and Guggenheim Securities, LLC are serving as Pfizer's financial advisors for the transaction. Wachtell, Lipton, Rosen & Katz, and De Brauw Blackstone Westbroek are acting as Pfizer's legal counsel and Davis Polk and Wardwell LLP is serving as its special tax counsel.

25.     On February 13, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

## B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

26.     The Proxy Statement, which recommends that Mylan shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i)

Mylan's and the Upjohn Business's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and PJT Partners LP ("PJT Partners"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving PJT Partners.

27. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Mylan Board of Directors; The Mylan Board's Reasons for the Combination; (ii) Opinions of Mylan's Financial Advisors; and (iii) Certain Unaudited Prospective Financial Information.

28. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated June 30, 2020 shareholder vote, Mylan shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

   1. **Material Omissions Concerning Mylan's and the Upjohn Business's Financial Projections**

29. The Proxy Statement omits material information concerning Mylan's and the Upjohn Business's financial projections.

30. The Proxy Statement purports to provide financial forecasts for Mylan and the Upjohn Business, stating in relevant part:

> In connection with the Mylan Board's consideration of the transactions and Mylan's ongoing strategic review, Mylan management prepared certain non-public, unaudited financial forecasts for Mylan on a standalone basis for fiscal years 2020 through 2023 regarding Mylan's revenue and adjusted EBITDA (collectively, the "Mylan Financial Forecasts") as well as unlevered free cash flow for fiscal years 2020 through 2023 and such forecasts were extrapolated for fiscal year 2024 (such unlevered free cash flow for fiscal years 2020 through 2023 and forecasts for fiscal year 2024, together with the Mylan Financial Forecasts, the "Mylan Financial Projections"). In addition, in connection with the Mylan Board's consideration of

the transactions, the Mylan Board was provided by Mylan management with certain non-public, unaudited financial forecasts for the Upjohn Business on a standalone basis for fiscal years 2020 through 2024 regarding the Upjohn Business's revenue, adjusted EBITDA and projected unlevered free cash flow (the "Upjohn Business Financial Projections" and, together with the Mylan Financial Projections, the "Financial Projections"). Management of Pfizer and the Upjohn Business prepared the Upjohn Business Financial Projections, with the exception of projected unlevered free cash flow.

31. The Proxy Statement presents tables setting forth purported summaries of the Mylan Financial Projections and the Upjohn Business Financial Projections.

32. The Proxy Statement, however, fails to disclose the following concerning the Mylan Financial Projections and the Upjohn Business Financial Projections: (1) all line items used to calculate (i) Adjusted EBITDA and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

33. The Proxy Statement provides that:

On June 20, 2019, the Mylan Board and the Mylan Strategic Review Committee met concurrently in person in Dublin, Ireland to discuss the potential combination of Mylan and the Upjohn Business and Mylan's standalone strategic plan, with members of Mylan senior management and representatives of Centerview, PJT Partners, Cravath, Nauta and Galt & Company, advisor to Mylan, participating. Members of Mylan senior management presented an update on Mylan's standalone strategic plan and certain contemplated business transformation initiatives, and reviewed the Mylan Financial Projections, which reflected developments in Mylan's business and industry since the preparation and review of the prior financial projections prepared by Mylan management.

34. The Proxy Statement, however, fails to disclose the "developments in Mylan's business and industry since the preparation and review of the prior financial projections prepared by Mylan management" and the resulting impact (including the quantification thereof) that these developments had on the Mylan Financial Projections.

35. The disclosure of the aforementioned projected financial information is material because it would provide Mylan shareholders with a basis to project the future financial

performance of Mylan and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

36. When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

37. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Mylan Financial Projections

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 24, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

and the Upjohn Business Financial Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Mylan shareholders.

### 2. Material Omissions Concerning Centerview's and PJT Partners' Financial Analyses

39. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning the analyses performed by Centerview and PJT Partners.

40. The Proxy Statement fails to disclose the individual multiples and financial metrics of each company utilized by Centerview and PJT Partners in their "*Selected Public Comparable Companies Analysis*[.]"

41. The Proxy Statement fails to disclose the following concerning Centerview's and PJT Partners' "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the standalone unlevered after-tax free cash flows that Mylan and the Upjohn Business were forecasted to generate during the year ending December 31, 2020 through the year ending December 31, 2024; (2) the terminal values of Mylan and the Upjohn Business; (3) the individual inputs and assumptions underlying the (i) range of exit multiples of 6.5x to 7.5x, and (ii) range of discount rates of 8.0% to 10.0%; (4) the implied perpetuity growth rates; and (5) the "Synergies" utilized by Centerview and PJT Partners that were furnished to Centerview and PJT Partners by Mylan.[2]

---

[2] The Proxy Statement provides that, "[i]n connection with rendering the opinion described above and performing its related financial analyses, Centerview reviewed, among other things . . . certain

42. The valuation methods, underlying assumptions, and key inputs used by Centerview and PJT Partners in rendering their purported fairness opinions must be fairly disclosed to Mylan shareholders. The description of Centerview's and PJT Partners' fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described above, Mylan shareholders are unable to fully understand Centerview's and PJT Partners' fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Mylan shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving PJT Partners

43. The Proxy Statement omits material information concerning potential conflicts of interest involving PJT Partners.

44. The Proxy Statement states that PJT Partners "has received and will receive customary compensation" for services that PJT Partners and certain of its affiliates provided to Mylan and Pfizer, stating in relevant part:

> During the two years preceding the date of its written opinion, PJT Partners and certain of its affiliates are advising or have advised (i) Mylan in connection with general corporate governance and shareholder engagement practices unrelated to the transactions through PJT Camberview, a business PJT Partners acquired as of October 1, 2018, for which PJT Partners has received and will receive customary

---

cost savings and operating synergies projected by management of Mylan, Pfizer and the Upjohn Business to result from the transactions, furnished to Centerview by Mylan for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the 'Synergies.'" *See* Proxy Statement at 110-11. Further, "[i]n arriving at its opinion, PJT Partners, among other things . . . reviewed certain cost savings and operating synergies projected by management of Mylan, Pfizer and the Upjohn Business to result from the transactions, furnished to PJT Partners, and approved for PJT Partners' use, by the management of Mylan for purposes of PJT Partners' analysis, which are collectively referred to in this summary of PJT Partners' opinion as the 'Synergies[.]'" *Id*. at 113.

11

compensation; and (ii) Pfizer in connection with general corporate governance and shareholder engagement practices unrelated to Mylan or the transactions, through PJT Camberview, for which PJT Partners has received and will receive customary compensation.

45. The Proxy Statement, however, fails to disclose the amount of compensation PJT Partners and its affiliates have received or expect to receive for such services.

46. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

47. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Mylan shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

51. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 24, 2020

Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*